UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

In re:  PHILIP BROCKMAN HAGER,
　　　　　　　　　Debtor.

Case No. 25-32367-KLP
Chapter 13

<u>OBJECTION TO AMENDED CHAPTER 13 PLAN DATED JUNE 25, 2025</u>

Comes now creditor Colonial Farm Credit, ACA (hereinafter "Colonial"), which objects to the Amended Chapter 13 Plan, dated June 25, 2025, and filed by the Debtor herein, and in support hereof states the following:

<u>Facts</u>

1. The Debtor filed his Chapter 13 bankruptcy petition (hereinafter the "Petition") on June 16, 2025, in the U. S. Bankruptcy Court, Eastern District of Virginia, his schedules and statement of financial affairs on June 25, 2025 (hereinafter the "Schedules"), his first Chapter 13 Plan on June 25, 2025, which has not been confirmed.

2. The Debtor filed an Amended Chapter 13 Plan at issue in this Objection on June 25, 2025 (hereinafter the "Chapter 13 Plan").

John J. Trexler, Esq.
Hairfield Morton, PLC
2800 Buford Road, Suite 201
Richmond, VA  23235
(804)320-6600
jtrexler@hmalaw.com
V. S. B. No. 30053
Counsel for Colonial Farm Credit, ACA

1

3. Debtor's Schedules disclose his ownership of three parcels of land in Hanover County, Virginia with a street address of 17226 Parsons Road, Beaverdam, VA 23015 and having map parcel numbers of 7815-64-6825, 7815-64-9318, and 7815-63-2552 (hereinafter the "Property").

4. Debtor is obligated to Colonial under the terms of two (2) promissory notes, both of which are secured by a first deed of trust on the Property.

5. Colonial has filed a proof of claim for loan number XXXXXXX1000 (hereinafter "Loan 1000") reflecting an arrearage as of the date the Petition was filed of $24,718.41. See Exhibit 1.

6. Likewise, Colonial Has filed a proof of claim for loan number XXXXXXX9713 (hereinafter "Loan 9713") reflecting an arrearage as of the date the Petition was filed of $9,188.89. See Exhibit 2.

7. Loan 9713 matured May 1, 2025.

8. The Chapter 13 Plan only lists a total arrearage owed to Colonial of $20,917.83 to be paid by the Chapter 13 Trustee and it is unclear whether the Debtor is referencing both loans described above.

9. The Chapter 13 Plan states, that except for the arrearages, Colonial will be paid by the Debtor pursuant to the contract without modification.

10. The Chapter 13 Plan lists regular contract payments to be $1,300.00 when the monthly payment amount for Loan 1000 is currently $1384.26.

11. The Debtor has failed to make payments accruing after his Petition was filed for the months July and August of 2025 for Loan 1000.

2

12.     Debtor's Schedule I lists a line item expense deduction for "R E taxes", Line 16, of $200 per month which is $2,400.00 annually; however, to Colonial's best knowledge and belief the annual real estate tax obligation owed to the Hanover County Treasurer for the Property is approximately $3,590.16.

Objections

13.     Colonial objects to the Chapter 13 Plan because it under represents the total arrearage due to Colonial as $20,917.38 when it actually totals $33,907.30 for two separate loans; therefore, the Chapter 13 Plan is underfunded and not in compliance with the requirements of 11 U.S.C. §1325(a)(5)(B)(ii).

14.     Colonial objects the Chapter 13 Plan because while the Debtor's Schedule J lists a line item expense deduction for "R E taxes", Line 16, of $200 per month which is $2,400.00 annually, to Colonial's best knowledge and belief, the annual real estate tax obligation owed to the Hanover County Treasurer for the Property is approximately $3,590.16 thereby rendering the Chapter 13 Plan infeasible.

15.     Colonial objects the Chapter 13 Plan because the Debtor has not proposed to pay the current monthly payment for Loan 1000 of $1,384.26.

16.     Colonial objects the Chapter 13 Plan in as much as the Debtor has failed to make the first two payments which became due to Colonial (July of 2025 and August of 2025) for Loan 1000 after the date of the Petition.

3

17.     For the reason set forth in Paragraphs 13-16 above, the Chapter 13

Plan is underfunded and the Debtor will not be able to make all payments

under it and comply with the Chapter 13 Plan as required by 11 USC

§1325(a)(6).

18.     Colonial objects the Chapter 13 Plan as Loan 9713 has matured and

still accruing interest; however, the Chapter 13 Plan does not indicate the

Debtor will pay interest on that secured obligation.

WHEREFORE, Colonial Farm Credit, ACA prays for an order DENYING

confirmation of the Debtor's Chapter 13 Plan dated June 25, 2025.

COLONIAL FARM CREDIT, ACA


By:_____**/s/ John J. Trexler, Esq.**_____
Of Counsel

John J. Trexler, Esq.
Hairfield Morton, PLC
2800 Buford Road, Suite 201
Richmond, VA  23235
(804)320-6600
jtrexler@hmalaw.com
V. S. B. No. 30053
Counsel for Colonial Farm Credit, ACA


You are notified that a hearing on this Objection shall take place on August 20, 2025 @ 9:10 AM at the U. S. Bankruptcy Court, 701 E. Broad Street, Room 5100, Richmond, VA  23219.

_____/s/ John J. Trexler, Esq.__
John J. Trexler

4

Certificate of Service

I hereby certify that on August 6, 2025, I have mailed a true copy of the foregoing Objection to Confirmation and hearing notice to Philip Brockman Hager at 583 Hazel Place, Unit A, Richmond, VA 23233, James H. Wilson, Jr., Esq. at 4860 Cox Road, Suite 200, Glen Allen, VA 23060, and to the Chapter 13 Trustee Suzanne E. Wade at 7202 Glen Forest Drive, Suite 202, Richmond, VA 23226.

_____/s/ John J. Trexler_____
John J. Trexler, Esq

## NOTICE  OF OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.)** If you do not wish the Court to grant the relief sought in the objection, or if you want the Court to consider your views on the objection, then on or before three (3) days before the date of the hearing, you or your attorney must file with the court, at the address below, a written request for a hearing [or a written response pursuant to Local Bankruptcy Rule 9013-1(H)]. If you mail your request for hearing (or response) to the court for filing, you must mail it early enough so the court will receive it on or before the date stated above.

Clerk of Court United States Bankruptcy Court
701 East Broad Street
Suite 4000
Richmond, VA 23219

With a copy to:

John J. Trexler, Esq.
Hairfield Morton, PLC
2800 Buford Road, Suite 201
Richmond, VA  23235

You must also attend the hearing on the motion (or objection) scheduled to be held on August 20, 2025 at 9:10 a.m. at United States Bankruptcy Court, 701 East Broad Street, Room 5100, Richmond, Virginia 23219. If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an order granting that relief.

　　　　　　　/s/ John J. Trexler, Esq.
　　　　　　　John J. Trexler

## Certificate of Service

I hereby certify that on August 6, 2025, I have mailed a true copy of the foregoing Notice to Philip Brockman Hager at 583 Hazel Place, Unit A, Richmond, VA 23233, James H. Wilson, Jr., Esq. at 4860 Cox Road, Suite 200, Glen Allen, VA 23060, and to the Chapter 13 Trustee Suzanne E. Wade at 7202 Glen Forest Drive, Suite 202, Richmond, VA  23226.

　　　　　　　/s/ John J. Trexler
　　　　　　　John J. Trexler, Esq

6

# EXHIBIT  1

**Fill in this information to identify the case:**

Debtor 1        Philip Brockman Hager

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:   Eastern District of Virginia

Case number    25-32367-KLP

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Colonial Farm Credit, ACA
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

c/o John J. Trexler, Esq. / Hairfield Morton, PLC
Name

2800 Buford Road, Suite 201
Number    Street

Richmond        VA        23235
City            State        ZIP Code

Contact phone (804) 320-6600

Contact email jtrexler@hmalaw.com

Where should payments to the creditor be sent? (if different)

Colonial Farm Credit, ACA: Attn Credit Dept
Name

7104 Mechanicsville Tpk.
Number    Street

Mechanicsville    VA        23111
City            State        ZIP Code

Contact phone 804-746-1252

Contact email rgill@colonialfarmcredit.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
          MM  / DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>1</u>  <u>0</u>  <u>0</u>  <u>0</u> |
| 7. **How much is the claim?** | $_____186,540.73  **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br><br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br><br>Limit disclosing information that is entitled to privacy, such as health care information.<br><br><u>money loaned</u> |
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes.  The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:**  <u>Deed of Trust recorded in the Hanover Co. Circuit Court</u><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $____573,000.00____ <span style="font-size:smaller"></span> 403,000.00<br>**Amount of the claim that is secured:** $____186,540.73<br><br>**Amount of the claim that is unsecured:** $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $____24,718.41<br><br>**Annual Interest Rate (when case was filed)** <u>7.00</u> %<br>☑ Fixed<br>☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   8/1/2025
                  MM / DD / YYYY

_Signature_

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | John J. Trexler |
| | First name          Middle name          Last name |
| Title | Attorney |
| Company | Hairfield Morton, PLC |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 2800 Buford Road, Suite 201 |
| | Number          Street |
| | Richmond                    VA          23235 |
| | City                        State        ZIP Code |
| Contact phone | (804) 320-6600          Email jtrexler@hmalaw.com |

06-18-2025

PHILIP B. HAGER
583 HAZEL PL UNIT A
RICHMOND, VA  23233

Attn:    PHILIP B. HAGER:

Subject:   Acct Nbr:    ███████1000
           Borrower(s): PHILIP B. HAGER

Dear  PHILIP B. HAGER:

The amount needed to fully satisfy the above loan on __06-16-2025__ is __186,540.73__.
The following table describes the payoff amount in detail:

| Balance Description | Due Bank | Due Customer | Per Diem After 06-16-2025 |
|---|---|---|---|
| Note Interest | 11,161.98 | | 31.94 |
| Note Balance | 166,552.32 | | |
| Late Charge Balance | 682.10 | | |
| Legal Fees and Cost | 8,144.33 | | |
| Totals | 186,540.73 | 0.00 | |

Very truly yours,

ARREARAGE FOR LOAN xxxx1000 AS OF JUNE 16, 2025

| | |
|---|---|
| Unpaid Principal | $ 4,730.00 |
| Interest | $11,161.98 |
| Late Charges | $ 682.10 |
| Legal Fees | $ 8,144.33 |
| **Total Arrears** | **$24,718.41** |

# FIXED RATE NOTE

Loan Number: ████████
Amount: $ 176,000.00

Effective Date of Note: 06/03/2022

## REPAYMENT SCHEDULE

| NUMBER | TYPE | | AMOUNT | DESCRIPTION OF DUE DATE | |
|--------|------|---|--------|------------------------|---|
| 239 | Fixed Payment | **Installment(s) of $ | 1,384.26 | due | Monthly beginning | 06/01/2022 |
| | | **Installment(s) of $ | | due | | |
| | | **Installment(s) of $ | | due | | |
| | | **Installment(s) of $ | | due | | |

A final installment of the unpaid principal balance of the indebtedness and all accrued interest is due 05/01/2042 . All installments are successive unless otherwise noted and are payable on the same day of the month as the initial installment. Installment payments will be applied to amounts due in such manner as Association may determine in its sole discretion, except as otherwise noted herein.

**Fixed Payment means the installment amount amortizes both principal and interest. Fixed Principal means the installment amount includes principal only and interest installments are separate. Principal Only means the installment amount includes principal only and interest installments are separate. Interest Only means the installment amount includes accrued interest only and principal installments are separate.

For value received, the undersigned (whether one or more) promise(s) to pay, in lawful money of the United States of America, in accordance with the repayment schedule(s) above stated, to the order of Colonial Farm Credit, ACA, as agent/nominee (together with any holder hereof, "Association"), at its office in Mechanicsville, VA, or any other such place as designated by Association in writing, the principal sum of One Hundred Seventy Six Thousand and 00/100 Dollars ($176,000.00), with interest until paid at a rate of Seven and 000000/100000 percent (7.0%) per annum.

The undersigned and every endorser and assumer of this note hereby expressly waive presentment, demand, protest and notice of dishonor, and consent to all renewals, releases, extensions, modifications, remodifications or any other rearrangements of the indebtedness evidenced by this note, and releases of personal liability and of security.

If payment of principal and/or interest (or portions thereof) is not paid when due, if any of the undersigned dies or files a petition in voluntary bankruptcy, for receivership, for corporate reorganization, or for other debtor relief of any character or kind, or is adjudged a bankrupt, or if the undersigned is dissolved or any beneficial interest in the undersigned is assigned or transferred and the undersigned is not a natural person, or if the undersigned fails to perform or observe any of its other obligations under this note, the loan agreement, or any other agreement, instrument or other document evidencing, securing or otherwise relating to the loan indebtedness evidenced by this note, or any part thereof, this note shall be in default.

At the option of Association, any default under the terms and conditions of this note or under any other written instrument executed by the undersigned (or any one of the undersigned) or any other party now and related to guaranteeing or securing the indebtedness, whether provided concurrently herewith or arising hereafter, in favor of and/or delivered to the Association shall constitute a default under this note and any one or more of such notes or other written instruments. Upon default, Association, at its option, and without notice to the undersigned, may declare this note and all other indebtedness owed by the undersigned (or any one of them) to be immediately due and payable; may cease to make any further advances under this note; may foreclose upon or sell any or all of the security for this note, in such order as it may prefer; may proceed with collections; may apply the proceeds to any indebtedness secured thereby in any order which it may desire; and may exercise from time to time and collections; may apply the proceeds to any indebtedness secured thereby in any order which it may desire; and may exercise from time to time all rights and remedies available under the Uniform Commercial Code and other applicable law, and under any other instrument relative to such indebtedness or security. Unless prohibited by law, any applicable prepayment premium shall be due and payable upon such acceleration.

If Association employs attorney(s) to collect the indebtedness evidenced by this note, or to enforce or preserve any rights provided for herein or relating to any collateral for this note, or suit is filed hereon, or proceedings are had in bankruptcy or any other court whatsoever with respect thereto, then, in addition to any principal, interest or other charges provided for herein, Association shall also recover all costs and expenses, including attorneys' fees and legal expenses reasonably incurred in connection therewith, including such costs and fees incurred on appeal. Such amounts shall become part of the indebtedness evidenced hereby and shall be immediately payable on demand, and shall, to the extent permitted by law, bear interest from the date incurred until paid at the rate provided herein. This agreement shall be governed in accordance with the laws of the State/Commonwealth of Virginia, without regard to conflict of laws rules. Any dispute arising hereafrom shall be filed in any court in Virginia having jurisdiction.

If there is any error or omission in this note or in any instrument securing it, the undersigned will promptly, upon request of Association, execute a new note or other documents as deemed necessary by Association to correct such error or omission and will promptly pay upon demand of Association all attorneys' fees, costs and expenses incurred in connection therewith. If the undersigned fails to pay, upon demand of Association, any sums due or incurred by Association for any of the purposes stated in this note, Association may advance the same, and all amounts so advanced shall become principal immediately due and payable hereunder.

The undersigned agrees to provide current tax returns and financial statements, including a balance sheet and income statement in a form acceptable to the Association as may be from time to time requested by Association while the indebtedness evidenced hereby or any other indebtedness from the undersigned is outstanding.

The undersigned may at any time make prepayments of principal in any amount, provided all accrued interest and all other expenses and charges have been paid current. All payments shall be applied first to the Association's costs and expenses, including attorneys' fees, second to late charges, third to interest and last to principal. Prepayments applied to installments will be in inverse order of maturity, except as otherwise provided in writing by Association.

If any installment of principal and/or interest (or portions thereof) is not paid when due and remains unpaid at the end of twenty-nine (29) calendar days, a late charge equal to the sum of Five and 00/100 percent (5.00%) of the overdue installment shall be paid by undersigned to Association, not to exceed a maximum of $N/A .

## IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

The undersigned irrevocably appoint and authorizes W. Richard Hairfield, and Ronnie G. Gill, any of whom may act, as any substitute attorney-in-fact appointed by the noteholder as provided in Virginia Code 8.01-436, as his true and lawful attorney-in-fact, to appear before the Clerk of the Circuit Court at Hanover County, Virginia or such other court as may have jurisdiction, at any time after default hereunder, to waive the issuance and service of process and confess judgment against the undersigned in the total amount of the unpaid principal of this Note, together with the cost of confessing and entering judgment, and any arrears in the proceeding and consent to immediate execution upon the judgment. The undersigned ratifies and confirms all that the attorneys may do pursuant to the foregoing. The Note and any judgment based upon it shall be fully negotiable and assignable by the noteholder.

G00902XT Rev 6/017

Page 1 of 2





Effective Date of Note: 06/03/2022
Loan Number: ████████████01
Amount: $ 176,000.00

If any installment of principal and/or interest (or portions thereof) is not paid when due or any other default occurs under the terms and conditions of this note and all defaults under this note have not been cured within sixty (60) calendar days after the occurrence of the first such default, the interest rate on the entire indebtedness evidenced hereby, at the option of Association, shall be increased beginning on the sixty-first (61'st) day after the occurrence of the first such default and continuing through and including the day all past due sums have been paid hereunder and all other defaults under this note have been cured, to an amount equal to the rate or rates otherwise being charged hereunder plus Two and 00/100 percent (2.00%) per annum.

This note is secured by real estate security instrument(s) dated: May 3, 2022, as modified from time to time.

If all or any part of the real property securing this Note is sold, transferred or conveyed without the Association's prior written consent, the Association at its option may require immediate payment in full of all indebtedness evidenced by this Note, unless the exercise of this right is prohibited by applicable law.

THE UNDERSIGNED AND ASSOCIATION, KNOWINGLY AND VOLUNTARILY, WAIVE THE RIGHT TO A JURY TRIAL ON ANY CLAIM OR ACTION ARISING OUT OF OR RELATED TO THIS NOTE OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS NOTE OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND ASSOCIATION.

THIS DOCUMENT IS EXECUTED BY UNDERSIGNED IN FAVOR OF ASSOCIATION AS AGENT/NOMINEE OF ITS WHOLLY-OWNED SUBSIDIARY Colonial Farm Credit, FLCA PURSUANT TO THE MASTER AGREEMENT DESCRIBED HEREIN. AT THE OPTION OF ASSOCIATION, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT EXECUTED BY UNDERSIGNED AND OWNED, HELD OR SERVICED BY Colonial Farm Credit, ACA FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES SHALL CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

This note is the joint and several obligation of all persons executing it. Given under the hand and seal of the undersigned.



_____ (L.S.)
Phillip Brockman Hager

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

20220504000067380  DEED Bk: 3352 Pg: 2027
05/04/2022 12:02 PM Pages: 7
DEED OF TRUST EXEMPT FROM TAXES
FRANK D. HARGROVE JR., CLERK
BY: LTAYLOR   HANOVER CO. VA

Upon Recording, Please Return To:

THIS INSTRUMENT PREPARED BY:                    EXEMPT FROM RECORDATION
Colonial Farm Credit, ACA                       TAXES PURSUANT TO 12
as agent/nominee                                U.S.C.2098
7104 Mechanicsville Turnpike
Mechanicsville          , VA  23111             7815-63-2552
                    Tax Parcel Identification No. 7815-04-9518
                                                7815-04-6805

# THIS IS A CREDIT LINE DEED OF TRUST

THIS CREDIT LINE DEED OF TRUST, made this 3rd    day of May        , in the year  2022 , by
and between Philip Brackman HAGER, whose address is 4700 Kipper Dr, Moseley, Chesterfield
County, VA 23120.

hereinafter called "Grantor," and W. Richard Hairfield, 2800 Buford Road, Richmond, Chesterfield
County/City, Virginia, 23235 and Ronnie G. Gill, 7104 Mechanicsville Turnpike, Mechanicsville, Essex
County/City, Virginia, 23111 respectively, Trustees, either or both of whom may act, hereinafter called
"Trustee."

Communications or notices contemplated under Section 55.1-318 of the Code of Virginia may be mailed or
delivered to the Beneficiary's principal place of business, which is 7104 Mechanicsville Turnpike
Mechanicsville, VA 23111.

WITNESSETH; that for and in consideration of the sum of One Dollar ($1.00), cash in hand paid, the
receipt of which is hereby acknowledged, and in consideration of the loan(s) hereafter described the Grantor
does hereby grant and convey with general warranty and English covenants of title to said Trustee the
following Property located in Hanover County/City of Beaverdam:
See attached Schedule "A"

TOGETHER with all hereditaments, easements, rights of way and appurtenances hereunto belonging
and all rents, royalties, issues and profits thereof; all minerals, oil, gas and similar matters; and all
improvements thereon and all fixtures and accessories now or hereafter annexed and attached thereto; and
further together with the interest of Grantor in all adjoining streets and alleys and all real property added to
or combined with the property by boundary line adjustment or otherwise, hereinafter collectively the
"Property".

IN TRUST to secure unto Colonial Farm Credit, ACA
as agent/nominee      (hereinafter called the "Beneficiary"), the performance of the covenants herein
contained and to secure unto the Beneficiary the payment when due of the following described indebtedness:
(a) All indebtedness and obligations of the Grantor to the Beneficiary or the Trustee which arise under the
provisions of any of the Grantor's covenants and agreements herein; (b) Any renewals, extensions,
refinances, reamortizations, modifications or other rearrangements; and (c) All indebtedness and obligations,
whether now existing or hereafter arising and however evidenced, of the Grantor to the Beneficiary, not
exceeding in the aggregate at any one time outstanding, the principal amount of
One Hundred Seventy Six Thousand and 00/100
_____ Dollars ($ 176,000.00       ), plus interest thereon and costs of
collection, whether all or any part of such indebtedness and obligations is direct or indirect, fixed or
contingent, matured or unmatured, liquidated or unliquidated, whether contracted by the Grantor alone,
jointly, or jointly and severally with another, and whether originally contracted with the Beneficiary or
acquired by the Beneficiary by assignment, transfer or otherwise from another. The indebtedness and
obligations secured hereby may, but need not, be evidenced by the Grantor's endorsement or guaranty of the
indebtedness or obligations of another obligor to the Beneficiary.

ANYTHING contained herein or elsewhere to the contrary notwithstanding, this deed of trust secures
the indebtedness and the obligations described above, and the Grantor hereby acknowledges and agrees that
this deed of trust shall survive and shall not be merged into any other deed of trust, mortgage or security

G01505VA (0819)                           Page 1 of 6

agreement executed by the Grantor in favor of the Beneficiary (this deed of trust and such other documents being hereinafter collectively called a "Security Instrument"), whether now existing or hereafter entered into, even though the Beneficiary, one or both of the Trustees, the Property or the Indebtedness secured shall be the same as described in this deed of trust. Accordingly, the Grantor, Trustees and the Beneficiary intend, if one or more Security Instruments are recorded against the Property, that such Security Instruments shall not be merged and that each such Security Instrument, and the liens, encumbrances and security interests created thereby, shall survive separately.

WHEREVER used herein the masculine gender shall include the feminine and neuter and the neuter gender shall include the masculine and feminine and the singular form shall include the plural and all the covenants and agreements of Grantor shall extend to and bind his heirs, devisees, successors and assigns.

GRANTOR covenants and agrees, jointly and severally, with the Trustee and the Beneficiary as follows:

First: That nothing herein contained shall be construed to necessarily obligate the Beneficiary to make loans and advances to the Grantor and that the sole purpose of this deed of trust is to provide collateral security for presently existing indebtedness and for loans and advances the Beneficiary may hereafter make to the Grantor; that the obligation, or lack thereof, of the Beneficiary to make any future loans or advances to the Grantor is not contained herein, but rather is set forth in the note(s) or other loan documents evidencing Grantor's indebtedness to the Beneficiary.

Second: That he warrants generally the Property hereby conveyed; that he is seized thereof in fee simple and has a right to convey same; that he has done no act to encumber the same; that he will execute such further assurances thereof as may be requisite; and that he will use the proceeds of the loan(s) secured hereby solely for the purposes set forth in his application(s) for said loan(s).

Third: That should the title to the hereby described Property or any portion thereof be acquired by any person, partnership, corporation or other entity, other than the Grantor, by voluntary or involuntary grant or assignment, or in any other manner without the Beneficiary's prior written consent, then all of said indebtedness shall at the option of the Beneficiary immediately become due and owing, unless prohibited by law.

Fourth: That he will pay or cause to be paid when due all indebtedness secured hereby, and any extensions, renewals, refinances, modifications, reamortizations or other rearrangements thereof, together with all interest thereon, and all other sums, including but not limited to any prepayment or late charges, payable by him in accordance with the terms of this deed of trust and the note(s) secured hereby, and agrees to pay the said indebtedness without any set-off whatsoever; and that he hereby expressly waives, to the extent set forth in the note(s) secured hereby and, in any event, to the extent of the Property described herein, the benefit of all exemptions, homestead or otherwise, under the laws of this or any other state.

Fifth: That he hereby assigns to the Beneficiary as additional collateral all royalties or other monies due or to become due from any surface or subsurface right or for any right or privilege in any way affecting or pertaining to the Property herein described and all monies which may become due in any condemnation proceedings affecting the said Property and all sums received may be applied, at the option of the Beneficiary, to the discharge of any part or all of the indebtedness secured hereby, whether or not the same be due and payable, or at the option of the Beneficiary, such sums may be returned to the Grantor and the Grantor will not grant any surface or subsurface rights without the written consent of the Beneficiary. Without in any way limiting the generality of the foregoing, the above mentioned rights and privileges with respect to which said royalties or other monies are assigned as additional collateral shall include, but not be limited to, surface or subsurface mineral easements and profits, rights to use of air space, land use rights, and agreements restricting particular land uses, including nonagricultural uses. Grantor further covenants and agrees that he will not, except with the written concurrence of the Beneficiary, lease or transfer to the owner or operator of any other lands, any part of any tobacco acreage allotment or allotments or other allotments now existing or hereafter established on any of the Property herein described and that he will not do or perform any act which might impair or tend to impair the continuance of such allotments on the said Property, except that this covenant shall in no way interfere with the Grantor's voting of allotment controls under the existing system of referendums.

Sixth: That he will insure and keep insured buildings and other improvements now on or which may hereafter be placed on said Property against loss or damage by fire, lightning, explosion, riot, aircraft and vehicle damage, smoke, windstorm, hail or other casualty with companies and in amounts satisfactory to the Beneficiary, which amount of insurance coverage shall in any event, at the minimum, equal either the balance of the indebtedness secured hereby, the actual cash value of the property insured or the replacement cost of the property insured, whichever is less. All such insurance shall name Beneficiary as mortgagee/loss payee, and shall provide for prior written notice of termination to Beneficiary. In addition to other insurance coverages if the property is now or hereafter located in a government mandated flood area where participation in a Federal Flood Insurance Program is required, Grantor will obtain and maintain flood insurance in such amount as Beneficiary requires on all buildings, improvements, fixtures and any mobile home(s), now existing or hereafter erected, placed or maintained on or in the Property described in this deed of trust, together with all other personal property securing Grantor's obligations to Beneficiary and maintained in or on such buildings, improvements or mobile home(s), until the loans, future advances and all other indebtedness secured by such Property and this deed of trust are fully paid. Beneficiary may require

Grantor to obtain and maintain such flood insurance at the time the loan(s) secured hereby are made or at any time thereafter until the loans secured by such property are fully paid. Grantor further agrees to pay Beneficiary all reasonable fees and costs incurred in determining whether any of such property is located in an area having special flood hazards including determination fees (of initial and subsequent determination as well as fees for monitoring the flood hazard status of the property during the life of the loan), together with the cost of premiums and fees incurred with purchasing flood insurance for Grantor, if Grantor fails to do so within the time period required by Beneficiary. Any such fees, premiums or costs shall, in the Beneficiary's sole discretion, be due and payable on demand or as otherwise provided for in the promissory note(s) secured hereby or this deed of trust. Any policy evidencing such insurance shall be deposited with and loss thereunder to be payable to the Beneficiary as its interest may appear. In the event of loss Grantor will give immediate notice by mail to the Beneficiary, who may make proof of loss if not made promptly by Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss to the order of the Beneficiary only, instead of to the Grantor and the Beneficiary jointly, and the insurance proceeds, or any part thereof, may be applied by the Beneficiary to the restoration or repair of the damaged property or at the option of the Beneficiary may be applied to the reduction of the indebtedness secured hereby. If Beneficiary elects to apply such proceeds to said indebtedness, Beneficiary shall have sole discretion as to the manner in which the application of such proceeds is distributed among principal, interest, charges, penalties, expenses and costs, etc. comprising the indebtedness secured hereby. To the extent permitted by law, in the event of foreclosure of this deed of trust or the transfer of title to the Property herein described in extinguishment of the indebtedness secured hereby, all right, title and interest of the Grantor in and to any insurance policies then in force shall pass to the purchaser or grantee.

Seventh: That he will pay when due all taxes, liens, judgments or assessments heretofore or hereafter levied, assessed or constituting liens upon the Property herein described; and in the event Grantor fails to pay the same when due or fails to maintain insurance as herein provided, the Beneficiary may make such payment or provide such insurance and amounts paid therefor shall become a part of the indebtedness secured hereby and bear interest at the billing rate then in effect from the date of payment.

Eighth: That, if required as a condition of any loan secured hereunder, Grantor shall pay to Beneficiary on the day installments are due, until the note is paid in full or any escrow requirement is otherwise waived in writing by Beneficiary, a sum to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this instrument as a lien or encumbrance on the Property; and (b) premiums for any and all insurance required by Beneficiary. Such amounts required hereunder shall be determined in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X ("RESPA"). Upon payment in full of all sums secured by this instrument, or if any such escrow requirement is no longer required as a condition of any loan secured hereunder, Beneficiary shall promptly refund to Grantor any funds held by Beneficiary under this escrow requirement.

Ninth: That he will keep the Property and all improvement thereon in good repair; that he will maintain and work the Property in a good and husbandlike manner; that he will commit no waste and that he will not cut or remove or permit to be cut or removed any wood or timber from said Property except for domestic use without the written consent of the Beneficiary and the Beneficiary shall have the right to injunction or otherwise to prevent the cutting or removal of any wood or timber from said Property irrespective of whether or not the balance of the security is ample to protect the Beneficiary.

Tenth: The terms "hazardous waste," "hazardous substance," "disposal," "release" and "threatened release" as used in this Security Instrument, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Borrower represents and warrants to Lender that: (a) During the period of Borrower's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous substance on, under, about or from the Property; (b) Borrower has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing (i) any use, generation, manufacture, treatment, disposal, release or threatened release of any hazardous substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Borrower nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable Federal, state and local laws, regulations and ordinances, including without limitation those laws, regulations and ordinances described above. Borrower authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Borrower's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Instrument. Any inspections or tests made by Lender shall be

G6890SVA (0916)                                    Page 3 of 6

for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of the Lender to Borrower or any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste and substances. Borrower hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of this Security Instrument or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of hazardous waste or substance on the Property. The provisions of this section of the Security Instrument, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Instrument and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Eleventh: That he will permit the Trustee or Beneficiary through its authorized agents to enter upon the Property herein described at any reasonable time for the purpose of inspecting the Property and the order, condition and repair of the buildings, improvements and other collateral located on the Property hereinafter described.

Twelfth: That if at any time hereafter the Beneficiary or Trustee shall for any reason employ agents or attorneys in connection with this deed of trust or the obligation(s) secured hereby, the Grantor hereby agrees to pay the reasonable costs thereof, and any amounts paid by the Beneficiary or Trustee for that purpose shall become a part of the indebtedness secured hereby and shall be payable on demand with interest at the billing rate then in effect from the date of payment. Without limitation, Beneficiary may obtain an updated appraisal of the Property from time to time, at Grantor's expense.

Thirteenth: That, upon default, in addition to any other remedies provided by law, the Trustee shall have the right to take possession of the Property as authorized by law and to operate and manage or lease the same and the Trustee may make any reasonable and proper advances for the operation, maintenance and management of the Property and any sums so advanced shall become part of the indebtedness secured hereby and be payable immediately with interest at the billing rate then in effect from the date of payment.

Fourteenth: Said Grantor hereby grants to the Beneficiary the right and power to appoint a substitute trustee(s) for any reason; and it is agreed that, upon the exercise of this power by the Beneficiary, the substituted trustee(s) shall be vested with all the powers, rights, authorities, and duties vested in the Trustee herein designated and the Beneficiary shall designate and appoint the substitute trustee(s) by an instrument duly executed, acknowledged and filed for recordation in the office of the clerk of the court wherein this deed of trust is recorded.

Fifteenth: That upon default in the payment of the whole indebtedness secured hereby, or any part thereof, as the same shall become due and payable or in the event of a breach of any of the terms, covenants and conditions of this deed of trust or the note(s) secured hereby, or in the event the Grantor or any of them shall die, become insolvent, file any petition under the Federal Bankruptcy Code, make an assignment for the benefit of creditors, or file a petition for an arrangement with creditors, or if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12, the entire indebtedness secured hereby shall, at the option of the Beneficiary, become immediately due and payable with interest thereon as provided in the note(s) or other instrument(s) governing such indebtedness.

Sixteenth: That, upon default, the Trustee shall, upon the request of the Beneficiary, sell the Property herein described, either as a whole or in parcels, at public auction at the front door of the courthouse of the county wherein the Property is located, or at such other place as the Trustee may elect, for cash, or upon such other terms agreeable to the Beneficiary as the Trustee may deem beneficial in the execution of this trust, after first advertising the day, hour, place and terms of such sale and a description of the Property to be sold by publication in some newspaper of general circulation in the county or city where the Property is located, once a week for three successive weeks preceding the day of sale, and the Trustee may advertise in such other manner as will, in his opinion, be best calculated to attract bidders, and such sale may be adjourned from time to time by oral proclamation at the time and place appointed for the sale, and if necessary in making such sale, the Trustee may secure a title update and survey of said Property and the cost thereof shall become a part of executing this trust; that immediately upon the first insertion of the advertisement in some newspaper, as aforesaid, there shall be and become due by said Grantor to the Beneficiary all expenses incident to said advertising and any other fees and costs incurred by reason of the default hereunder, which said expenses, fees and costs said Grantor hereby covenants to pay as a part of the indebtedness secured hereby and neither Beneficiary nor the Trustee hereunder shall be required to receive the principal and interest only of the indebtedness secured hereby unless accompanied by a tender of said expenses, fees and costs, but said sale may be proceeded with unless prior to the day appointed therefor legal tender be made of said indebtedness, fees, expenses and costs. Interest shall accrue and Beneficiary shall be entitled to collect interest on all outstanding indebtedness secured hereby through the date of closing or settlement of sale of the Property at foreclosure. The Trustee shall pay out of the proceeds of sale: FIRST, all costs of executing this trust, including a reasonable commission to the Trustee and all reasonable

attorneys' fees, as permitted by applicable state law, and all other expenses incurred in execution of this trust, (including without limitation, advertising expenses, costs of obtaining possession of the Property, auctioneer fees, expenses required to correct any irregularity in the title, all taxes and assessments due at the time of closing of sale, and all sums advanced by Beneficiary or Trustee to pay utilities, taxes, assessments, cleaning or other costs of preparing the Property for sale), and all attorneys' fees and costs in substituting a trustee; SECOND, the indebtedness secured hereby, THIRD, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in the Trustee's hands are available; and the residue, if any, shall be paid to the Grantor. The Trustee shall settle the accounts in accordance with the statutes in such cases made and provided. In the event that the Property is advertised for sale but not sold, Borrower agrees to pay all expenses incurred in pursuing the remedies providing herein, including but not limited to, reasonable attorneys' and trustees' fees.

Grantor agrees to pay on demand, and Trustee may reimburse itself out of foreclosure proceeds as a cost of executing this trust all costs, expenses and reasonable attorneys' fees incurred by Trustee in defending itself in any claim or litigation arising out of its service or activities as Trustee hereunder, including without limitation any claims filed by Grantor or Borrower.

Seventeenth: That the Beneficiary, at its option, may require the Trustee to give a bond satisfactory to the Beneficiary, conditioned upon the faithful performance of the duties hereunder, and any premium paid on such bond shall become a part of the cost of executing this trust.

Eighteenth: That without affecting the liability of the Grantor or any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein and without affecting the rights of the Trustee or Beneficiary with respect to any security not expressly released in writing, and without affecting the priority of the lien of this deed of trust, the Trustee or Beneficiary may, at any time and from time to time, either before or after the maturity of said indebtedness, and without notice to or the consent of any party hereto or any other party: (a) release any person liable for payment of all or any part of the indebtedness or for performance of any obligation; (b) make any agreement nonamortizing, extending, renewing, refinancing, modifying or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation or subordinating, modifying or otherwise dealing with the lien or charge hereof; (c) exercise or refrain from exercising or waive any right Trustee or Beneficiary may have; (d) accept additional security of any kind; (e) release or otherwise deal with any Property, real or personal, securing the indebtedness, including all or any part of the Property herein described without affecting the lien priority of this deed of trust on the remainder of the Property, for the full amount of any indebtedness unpaid.

Nineteenth: THE DEBT SECURED HEREBY IS SUBJECT TO CALL UPON DEFAULT AND/OR SUBJECT TO THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY.

THIS DEED OF TRUST IS GOVERNED BY, UNLESS OTHERWISE MODIFIED HEREIN, §§ 55.1-320 AND 55.1-311 THROUGH 55.1-324 OF THE CODE OF VIRGINIA (1950) AS AMENDED AND THE TERMS AS SET FORTH IN §55.1-315, subject to the provisions hereof.

Grantor acknowledges and agrees that the fact that at any time no obligations may be outstanding while this Deed of Trust remains unreleased of record shall in no way affect the lien of this Deed of Trust as to any debts or obligations hereafter arising, and Beneficiary shall have no obligation to release this Deed of Trust upon satisfaction of obligations hereunder unless and until requested to do so by Grantor at a time when no obligations are outstanding.

THIS DEED IS EXECUTED BY UNDERSIGNED IN FAVOR OF, AND THE TERM "BENEFICIARY" AS USED HEREIN SHALL INCLUDE, Colonial Farm Credit, ACA, FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES Colonial Farm Credit, FLCA AND Colonial Farm Credit, PCA, AS THEIR INTERESTS MAY APPEAR.

WITNESS the hand and seal of said Grantor the day and year aforesaid.

_____ (SEAL)
Philip Brockman Hager

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

STATE OF _Virginia_                                          (Individual)
CITY/COUNTY OF _Henrico_                , to wit:

The foregoing instrument was acknowledged before me,
Notary Public, this 3rd    day of    May        , 2022    , by  Philip Brockman Hager

[Signatory(ies)], who is/are either personally known to me OR who has/have presented identification of
a valid driver's license                                    (a United States Passport, a
certificate of United States citizenship, a certificate of naturalization, an unexpired foreign passport, an alien registration
card with photograph, a state issued driver's license or a state issued identification card or a United States military card).

                                                    _Faisal S. Ali_
                                          Notary Public _Faisal S. Qureshi_
                                          Registration Number: _7064316_
                                          My term of office expires: _5-31-2022_

STATE OF                                                    (Corporate)
CITY/COUNTY OF                            , to wit:

The foregoing instrument was acknowledged before me,
Notary Public, this            day of        ,            , by

[Signatory], who is either personally known to me OR who has presented identification of
                                          (a United States Passport, a certificate of United States citizenship, a certificate
of naturalization, an unexpired foreign passport, an alien registration card with photograph, a state issued driver's license
or a state issued identification card or a United States military card), and who has voluntarily acknowledged this
instrument in his/her capacity as the                                    of
                            , a                                corporation, on its behalf.

                                          _____
                                          Notary Public
                                          Registration Number:
                                          My term of office expires:

GG1608VA (rev14)                          Page 6 of 6

Schedule A

Parcel I- 7815-63-2552

ALL that certain tract, piece or parcel of land, lying and being in Beaverdam
District, Hanover County, Virginia, shown on the below reference plat of survey as
Parcel B, containing 8.8 acres, more or less, prepared by Downing Surveys, Inc.,
dated May 10, 2005, revised August 7, 2005, and recorded in the Clerk's Office,
Circuit Court, Hanover County, Virginia in Deed Book 2576, page 468, said
survey being made a part hereof for a more particular description.

SUBJECT TO a non-exclusive easement for ingress and egress to and from Parcel
A, said easement being variable in width over approximately the southern half of
Parcel B and then becoming a fifty (50) foot non-exclusive easement over
approximately the northern half of Parcel B along the western boundary line of
Parcel B to a cul-de-sac at the northwestern corner of Parcel B, all as more
particularly shown on the aforesaid plat of survey.

Parcel II and III- 7815-64-9318 and 7815-64-6825

ALL those certain lots or parcels of land, lying and being in Hanover County,
Virginia, designated as Lot 1, containing 11.5 acres +/- and Lot 2, containing 11.5
acres +/-, on a plat prepared by Downing Surveys, Inc., entitled "Parsons Estates, a
subdivision of 23.0 +/- acres in the Beaverdam District, Hanover County, VA",
dated April 10, 2005, recorded April 26, 2007 in the Clerk's Office, Circuit Court,
Hanover County, Virginia in Plat Book 38, page 22, to which plat reference is
made for a more particular description of the property.

TOGETHER WITH a non-exclusive easement for ingress and egress to Parsons
Road Route 608, as shown on the above referenced plat.

7

# VARIABLE RATE NOTE

Loan Number: ~~████~~713
Amount: $ 8,281.80

Effective Date of Note: 04/29/2024

### REPAYMENT SCHEDULE

| NUMBER | TYPE | AMOUNT | | DESCRIPTION OF DUE DATE |
|---|---|---|---|---|
| 11 | Interest Only | Accrued Interest | due | Monthly beginning      08/01/2024 |
| | | *Installment(s) of $ | due | |
| | | *Installment(s) of $ | due | |
| | | *Installment(s) of $ | due | |
| | | *Installment(s) of $ | due | |

A final Installment of the unpaid principal balance and all accrued interest is due 05/01/2025 . All installments are successive unless otherwise noted and are payable on the same day of the month as the initial installment. Installment payments will be applied to amounts due in such manner as Association may determine in its sole discretion, except as otherwise provided herein.

**"Fixed Payment means the installment amount amortizes both principal and interest. Fixed Principal means the installment amount amortizes principal only and accrued interest is due with each installment. Principal Only means the installment amount includes principal only and interest installments are separate. Interest Only means the installment amount includes accrued interest only and principal installments are separate.

For value received, the undersigned (whether one or more) promise(s) to pay, in lawful money of the United States of America, in accordance with the repayment schedule(s) above stated, to the order of Colonial Farm Credit, ACA, as agent/nominee (together with any holder hereof, "Association"), at its office in Mechanicsville, VA, or any other such place as designated by Association in writing, the principal sum of Eight Thousand Two Hundred Eighty One and 80/100 Dollars ($8,281.80), with interest until paid at the rate of Nine and 00000/100000 percent (9.00000%) per annum; provided that said interest rate shall be subject to adjustment as set forth below on the date of any change to the Index, as defined herein (each such date a "Change Date"), and upon any such adjustment the unpaid principal balance shall bear such adjusted rate of interest from the date of adjustment. Beginning with the first Change Date, interest shall accrue at:

Prime rate: the U.S. Prime rate as published in the Money Rates section of The Wall Street Journal rounded upwards, if necessary, to the nearest whole multiple of one-eighth (1/8) of one percentage point (0.125) ("Index") plus 0.5000 percent ("Margin Points").

The adjusted interest rate on each Change Date shall be based on the Index for such Change Date, or, if the Change Date is not on a business day, then for the first business day thereafter. Association will calculate the new interest rate to become effective on each Change Date by adding the Margin Points to the Index. The new interest rate will be effective until the next Change Date.

If the Index should no longer be published, Association, in the exercise of reasonable judgment, shall substitute another means of determining an annual rate of interest, which shall thereafter be the "Index" as that term is used herein. Association will give the undersigned notice of the substitution.

The undersigned and every endorser and assumer of this note hereby expressly waive presentment, demand, protest and notice of dishonor, and consent to all renewals, refinances, extensions, modifications, reamortizations or any other rearrangements of the indebtedness evidenced by this note, and release of personal liability and of security.

If payment of principal and/or interest (or portions thereof) is not paid when due, if any of the undersigned dies or files a petition in voluntary bankruptcy, for receivership, for corporate reorganization, or for other debtor relief of any character or kind, or is adjudged a bankrupt, or if the undersigned is dissolved or any beneficial interest in the undersigned is assigned or transferred and the undersigned is not a natural person, or if the undersigned fails to perform or observe any of its other obligations under this note, the loan agreement, or any other agreement, instrument or other document evidencing, securing or otherwise relating to the loan indebtedness evidenced by this note, such note shall be in default.

At the option of Association, any default under this note or under any other written instrument executed by the undersigned (or any one of the undersigned) or any other party and related to guaranteeing or securing the indebtedness, whether provided concurrently herewith or arising hereafter, in favor of and/or delivered to the Association shall constitute a default under this note and under any one or more of such notes or other written instruments. Upon default, Association, at its option, and without notice to the undersigned, may declare this note and all other indebtedness owed by the undersigned (or any one of them) to be immediately due and payable; may cease to make any further advances under this note; may proceed with collections; may foreclose upon or sell any or all of the security for this note, in such order as it may prefer; may apply the proceeds to any indebtedness secured thereby in any order which it may desire; and may exercise from time to time all rights and remedies available under applicable law, and under any other instrument relative to such indebtedness or security. Unless prohibited by law, any applicable prepayment premium shall be due and payable upon such acceleration.

If Association employs attorney(s) to collect the indebtedness evidenced by this note, or to enforce or preserve any rights provided for herein or relating to any security for this note, or suit is filed hereon, or proceedings are had in bankruptcy or any other court whatsoever with respect thereto, then, in addition to any principal, interest or other charges provided for herein, Association shall also recover all costs and expenses, including attorneys' fees and legal expenses reasonably incurred in connection therewith, including such costs and fees incurred on appeal. Such amounts shall become part of the indebtedness evidenced hereby and shall be immediately payable on demand, and shall, to the extent permitted by law, bear interest from the date incurred until paid at the rate provided herein. This agreement shall be governed in accordance with the laws of the State/Commonwealth of Virginia, without regard to conflict of laws rules. Any dispute arising hereform shall be filed in any court in Virginia having jurisdiction.

If there is any error or omission in this note or in any instrument securing it, the undersigned will promptly, upon request of Association, execute a new note or other documents as deemed necessary by Association to correct such error or omission and will promptly pay upon demand of Association, Association all attorneys' fees, costs and expenses incurred in connection therewith. If the undersigned fails to pay, upon demand of Association, any sums due or incurred by Association for any of the purposes stated in this note, Association may advance the same, and all amounts so advanced shall become principal immediately due and payable hereunder.

### IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

The undersigned irrevocably appoint and authorizes W. Richard Hairfield, and Ronnie G. Gill, any of whom may act, or any substitute attorney-in-fact appointed by the noteholder as provided in Virginia Code §8.01-435, as his true and lawful attorney-in-fact, to appear before the Clerk of the Circuit Court of Hanover County, Virginia or such other court as may have jurisdiction, at any time after default hereunder, to waive the issuance and service of process and confess judgment against the undersigned in the total amount of the unpaid principal of this Note, together with the cost of confessing and entering judgment, all interest accrued thereon, and attorneys' fees as provided for herein and related loan documents, and to waive and release any errors in the proceeding and consent to immediate execution upon the judgment. The undersigned ratifies and confirms all that the attorneys may do pursuant to the foregoing. The Note and any judgment based upon it shall be fully negotiable and assignable by the noteholder.

Effective Date of Note: 04/29/2024
Loan Number: ████████713
Amount: $ 6,281.86

The undersigned agrees to provide current tax returns and financial statements, including a balance sheet and income statement in a form acceptable to the Association as may be from time to time requested by Association while the indebtedness evidenced hereby or any other indebtedness from the undersigned is outstanding.

If any installment of principal and/or interest (or portions thereof) is not paid when due and remains unpaid at the end of twenty-nine (29) calendar days, a late charge equal to the sum of Five and 00/100 percent (5.00%) of the overdue installment shall be paid by undersigned to Association, not to exceed a maximum of $N/A.

Amounts prepaid will be applied first to any late fees and reimbursements, then to billed, but unpaid interest. Unless otherwise required by law, additional amounts may be applied to accrued interest, outstanding principal and/or such other amounts outstanding as the Association in its sole discretion may determine. Prepayments will be applied to installments in inverse order of maturity, except as otherwise provided in a written notice by Association to the undersigned.

This note is secured by real estate security instrument(s) dated: May 3, 2022, as modified from time to time.

If all or any part of the real property securing this Note is sold, transferred or conveyed without the Association's prior written consent, the Association, at its option may require immediate payment in full of all indebtedness evidenced by this Note, unless the exercise of this right is prohibited by applicable law.

If any installment of principal and/or interest (or portions thereof) is not paid when due or any other default occurs under the terms and conditions of this note and all defaults under this note have not been cured within sixty (60) calendar days after the occurrence of the first such default, the interest rate on the entire indebtedness evidenced hereby, at the option of Association, shall be increased beginning on the sixty-first (61st) day after the occurrence of the first such default and continuing through and including the day all past due sums have been paid hereunder and all other defaults under this note have been cured, to an amount equal to the rate or rates otherwise being charged hereunder plus Two and 00/100 percent (2.00%) per annum.

THE UNDERSIGNED AND ASSOCIATION, KNOWINGLY AND VOLUNTARILY, WAIVE THE RIGHT TO A JURY TRIAL ON ANY CLAIM OR ACTION ARISING OUT OF OR RELATED TO THIS NOTE OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS NOTE OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND ASSOCIATION.

THIS DOCUMENT IS EXECUTED BY UNDERSIGNED IN FAVOR OF ASSOCIATION AS AGENT/NOMINEE OF ITS WHOLLY-OWNED SUBSIDIARY Colonial Farm Credit, PCA PURSUANT TO THE MASTER AGREEMENT DESCRIBED HEREIN. AT THE OPTION OF ASSOCIATION, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT EXECUTED BY UNDERSIGNED AND OWNED, HELD OR SERVICED BY Colonial Farm Credit, ACA FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES SHALL CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

This note is the joint and several obligation of all persons executing it. Given under the hand and seal of the undersigned.

_____    (L.S.)

PHILIP BROCKMAN HAGER
_____    (L.S.)

_____    (L.S.)

_____    (L.S.)

# Eastern District of Virginia
# Claims Register

### 25-32367-KLP Philip Brockman Hager

**Bankruptcy Judge:** Keith L Phillips
**Office:** Richmond
**Trustee:** Suzanne E Wade

**Chapter:** 13
**Last Date to file claims:** 08/25/2025
**Last Date to file (Govt):**

| | | |
|---|---|---|
| *Creditor:* (16788359)<br>Colonial Farm Credit, ACA<br>7104 Mechanicsville Tpk.<br>Mechanicsville, VA 23111 | **Claim No: 20**<br>*Original Filed Date:* 08/01/2025<br>*Original Entered Date:* 08/01/2025 | *Status:*<br>Filed by: CR<br>*Entered by:* John J. Trexler<br>*Modified:* |

Amount  claimed: $186540.73
Secured claimed: $186540.73

*History:*
Details   ◉   20-1    08/01/2025 Claim #20 filed by Colonial Farm Credit, ACA, Amount claimed: $186540.73 (Trexler, John)
*Description:*
*Remarks:*

## Claims Register Summary

**Case Name:** Philip Brockman Hager
**Case Number:** 25-32367-KLP
**Chapter:** 13
**Date Filed:** 06/16/2025
**Total Number Of Claims:** 1

| Total Amount Claimed* | $186540.73 |
|---|---|
| **Total Amount Allowed*** | |

*Includes general unsecured claims

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | $186540.73 | . |
| **Priority** | | |
| **Administrative** | | |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 08/01/2025 12:29:14 | | |
| **PACER Login:** trexlerjj | **Client Code:** | |
| **Description:** ClaimsRegRpt | **Search Criteria:** | 25-32367-KLP |

# EXHIBIT 2

**Fill in this information to identify the case:**

Debtor 1 _Philip Brockman Hager_

Debtor 2 _____
(Spouse, if filing)

United States Bankruptcy Court for the: Eastern District of Virginia

Case number _25-32367-KLP_

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | | |
| --- | --- | --- |
| **1. Who is the current creditor?** | Colonial Farm Credit, ACA | |
| | Name of the current creditor (the person or entity to be paid for this claim) | |
| | Other names the creditor used with the debtor _____ | |
| **2. Has this claim been acquired from someone else?** | ☑ No | |
| | ☐ Yes. From whom? _____ | |
| **3. Where should notices and payments to the creditor be sent?** | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | c/o John J. Trexler, Esq. / Hairfield Morton, PLC | Colonial Farm Credit, ACA: Attn Credit Dept |
| | Name | Name |
| | 2800 Buford Road, Suite 201 | 7104 Mechanicsville Tpk. |
| | Number          Street | Number          Street |
| | Richmond          VA          23235 | Mechanicsville          VA          23111 |
| | City          State          ZIP Code | City          State          ZIP Code |
| | Contact phone (804) 320-6600 | Contact phone 804-746-1252 |
| | Contact email jtrexler@hmalaw.com | Contact email rgill@colonialfarmcredit.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): | |
| | __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ | |
| **4. Does this claim amend one already filed?** | ☑ No | |
| | ☐ Yes. Claim number on court claims registry (if known) _____ | Filed on _____ MM / DD / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No | |
| | ☐ Yes. Who made the earlier filing? _____ | |

**Part 2:**    **Give Information About the Claim as of the Date the Case Was Filed**

6. **Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  9  7  1  3

7. **How much is the claim?**    $_____9,188.98 . **Does this amount include interest or other charges?**
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

8. **What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned

9. **Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

Nature of property:
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:    Deed of Trust recorded in the Hanover Co. Circuit Court
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:    $_____403,000.00
Amount of the claim that is secured:    $_____9,188.89
Amount of the claim that is unsecured:    $_____0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:    $_____9,188.89

Annual Interest Rate (when case was filed) 8.00 %
☐ Fixed
☑ Variable

10. **Is this claim based on a lease?**
☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $_____

11. **Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

---

### Part 3:   Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   8 / 1 / 2025
                  MM / DD / YYYY

Signature

**Print the name of the person who is completing and signing this claim:**

| Name | John J. Trexler | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Hairfield Morton, PLC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 2800 Buford Road, Suite 201 | | |
| | Number      Street | | |
| | Richmond | VA | 23235 |
| | City | State | ZIP Code |
| Contact phone | (804) 320-6600 | Email | jtrexler@hmalaw.com |

06-18-2025

PHILIP B. HAGER
583 HAZEL PL UNIT A
RICHMOND, VA  23233

Attn:    PHILIP B. HAGER:

Subject:    Acct Nbr:    ████████ 9713
            Borrower(s): PHILIP B. HAGER

Dear  PHILIP B. HAGER:

The amount needed to fully satisfy the above loan on   06-16-2025   is   9,188.98   .
The following table describes the payoff amount in detail:

| Balance Description | Due Bank | Due Customer | Per Diem After 06-16-2025 |
|---|---|---|---|
| Note Interest | 473.52 | | 1.82 |
| Note Balance | 8,281.86 | | |
| Late Charge Balance | 433.60 | | |
| Totals | 9,188.98 | 0.00 | |

Very truly yours,

# VARIABLE RATE NOTE

Loan Number: ~~XXXXXXXXX~~713
Amount:  $ 8,281.86

Effective Date of Note:  04/29/2024

## REPAYMENT SCHEDULE

| NUMBER | TYPE | AMOUNT Accrued Interest | | DESCRIPTION OF DUE DATE Monthly beginning | |
|---|---|---|---|---|---|
| 11 | Interest Only | *Installment(s) of $ | due | | 06/01/2024 |
| | | *Installment(s) of $ | due | | |
| | | *Installment(s) of $ | due | | |
| | | *Installment(s) of $ | due | | |

A final installment of the unpaid principal balance and all accrued interest is due 05/01/2025 . All installments are successive unless otherwise noted and are payable on the same day of the month as the initial installment. Installment payments will be applied to amounts due in such manner as Association may determine in its sole discretion, except as otherwise provided herein.

*Fixed Payment means the installment amount amortizes both principal and interest. Fixed Principal means the installment amount amortizes principal only and accrued interest is due with each installment. Principal Only means the installment amount includes principal only and interest installments are separate. Interest Only means the installment amount includes accrued interest only and principal installments are separate.

For value received, the undersigned (whether one or more) promise(s) to pay, in lawful money of the United States of America, in accordance with the repayment schedule(s) above stated, to the order of Colonial Farm Credit, ACA, as agent/nominee (together with any holder hereof, "Association"), at its office in Mechanicsville, VA, or any other such place as designated by Association in writing, the principal sum of Eight Thousand Two Hundred Eighty One and 86/100 Dollars ($8,281.86), with interest until paid at the rate of Nine and 00000/100000 percent (9.00000%) per annum; provided that said interest rate shall be subject to adjustment as set forth below on the date of any change to the index, as defined herein (each such date a "Change Date"), and upon any such adjustment the unpaid principal balance shall bear such adjusted rate of interest from the date of adjustment. Beginning with the first Change Date, interest shall accrue at:

Prime rate: the U.S. Prime rate as published in the Money Rates section of The Wall Street Journal rounded upwards, if necessary, to the nearest whole multiple of one-eighth (1/8) of one percentage point (0.125) ("Index") plus 0.5000 percent ("Margin Points").

The adjusted interest rate on each Change Date shall be based on the Index for such Change Date, or, if the Change Date is not on a business day, then for the first business day thereafter. Association will calculate the new interest rate to become effective on each Change Date by adding the Margin Points to the Index. The new interest rate will be effective until the next Change Date.

If the Index should no longer be published, Association, in the exercise of reasonable judgment, shall substitute another means of determining an annual rate of interest, which shall thereafter be the "Index" as that term is used herein. Association will give the undersigned notice of the substitution.

The undersigned and every endorser and assumer of this note hereby expressly waive presentment, demand, protest and notice of dishonor, and consent to all renewals, refinances, extensions, modifications, reamortizations or any other rearrangements of the indebtedness evidenced by this note, and releases of personal liability and of security.

If payment of principal and/or interest (or portions thereof) is not paid when due, if any of the undersigned dies or files a petition in voluntary bankruptcy, for reorganization, for corporate reorganization, or for other debtor relief of any character or kind, or is adjudged a bankrupt, or if the undersigned is dissolved or any beneficial interest in the undersigned is assigned or transferred and the undersigned is not a natural person, or if the undersigned fails to perform or observe any of its other obligations under this note, the loan agreement, or any other agreement, instrument or other document evidencing, securing or otherwise relating to the loan indebtedness evidenced by this note, or any part thereof, this note shall be in default.

At the option of Association, any default under this note or under any other written instrument executed by the undersigned (or any one of the undersigned) or any other party and related to guaranteeing or securing the indebtedness, whether provided concurrently herewith or arising hereafter, in favor of and/or delivered to the Association shall constitute a default under this note and under any one or more of such notes or other written instruments. Upon default, Association, at its option, and without notice to the undersigned, may declare this note and all other indebtedness owed by the undersigned (or any one of them) to be immediately due and payable; may cease to make any further advances under this note; may proceed with collections; may foreclose upon or sell any or all of the security for this note, in such order as it may prefer; may apply the proceeds to any indebtedness secured thereby in any order which it may desire; and may exercise from time to time all rights and remedies available under applicable law, and under any other instrument relative to such indebtedness or security. Unless prohibited by law, any applicable prepayment premium shall be due and payable upon such acceleration.

If Association employs attorney(s) to collect the indebtedness evidenced by this note, or to enforce or preserve any rights provided for herein or relating to any security for this note, or suit is filed hereon, or proceedings are had in bankruptcy or any other court whatsoever with respect thereto, then, in addition to any principal, interest or other charges provided for herein, Association shall also recover all costs and expenses, including attorneys' fees and legal expenses reasonably incurred in connection therewith, including such costs and fees incurred on appeal. Such amounts shall become part of the indebtedness evidenced hereby and shall be immediately payable on demand; and shall, to the extent permitted by law, bear interest from the date incurred until paid at the rate provided herein. This agreement shall be governed in accordance with the laws of the State/Commonwealth of Virginia, without regard to conflict of laws rules. Any dispute arising herefrom shall be filed in any court in Virginia having jurisdiction.

If there is any error or omission in this note or in any instrument securing it, the undersigned will promptly, upon request of Association, execute a new note or other documents as deemed necessary by Association to correct such error or omission and will promptly pay upon demand of Association, Association all attorneys' fees, costs and expenses incurred in connection therewith. If the undersigned falls to pay, upon demand of Association, any sums due or incurred by Association for any of the purposes stated in this note, Association may advance the same, and all amounts so advanced shall become principal immediately due and payable hereunder.

## IMPORTANT NOTICE

THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.

The undersigned irrevocably appoint and authorizes W. Richard Hairfield, and Ronnie G. Gill, any of whom may act, or any substitute attorney-in-fact appointed by the noteholder as provided in Virginia Code §8.01-435, as his true and lawful attorney-in-fact, to appear before the Clerk of the Circuit Court of Hanover County, Virginia or such other court as may have jurisdiction, at any time after default hereunder, to waive the issuance and service of process and confess judgment against the undersigned in the total amount of the unpaid principal of this Note, together with the cost of confessing and entering judgment, all interest accrued thereon, and attorneys' fees as provided for herein and related loan documents, and to waive and release any errors in the proceeding and consent to immediate execution upon the judgment. The undersigned ratifies and confirms all that the attorneys may do pursuant to the foregoing. The Note and any judgment based upon it shall be fully negotiable and assignable by the noteholder.

G04702XT Rev (09)(17)

Page 1 of 2




Effective Date of Note: 04/29/2024
Loan Number: ████████████713
Amount: $ 6,281.88

The undersigned agrees to provide current tax returns and financial statements, including a balance sheet and income statement in a form acceptable to the Association as may be from time to time requested by Association while the indebtedness evidenced hereby or any other indebtedness from the undersigned is outstanding.

If any installment of principal and/or interest (or portions thereof) is not paid when due and remains unpaid at the end of twenty-nine (29) calendar days, a late charge equal to the sum of Five and 00/100 percent (5.00%) of the overdue installment shall be paid by undersigned to Association, not to exceed a maximum of $N/A .

Amounts prepaid will be applied first to any late fees and reimbursements, then to billed, but unpaid interest. Unless otherwise required by law, additional amounts may be applied to accrued interest, outstanding principal and/or such other amounts outstanding as the Association in its sole discretion may determine. Prepayments will be applied to installments in inverse order of maturity, except as otherwise provided in a written notice by Association to the undersigned.

This note is secured by real estate security instrument(s) dated: May 3, 2022, as modified from time to time.

If all or any part of the real property securing this Note is sold, transferred or conveyed without the Association's prior written consent, the Association, at its option may require immediate payment in full of all indebtedness evidenced by this Note, unless the exercise of this right is prohibited by applicable law.

If any installment of principal and/or interest (or portions thereof) is not paid when due or any other default occurs under the terms and conditions of this note and all defaults under this note have not been cured within sixty (60) calendar days after the occurrence of the first such default, the interest rate on the entire indebtedness evidenced hereby, at the option of Association, shall be increased beginning on the sixty-first (61st) day after the occurrence of the first such default and continuing through and including the day all past due sums have been paid hereunder and all other defaults under this note have been cured, to an amount equal to the rate or rates otherwise being charged hereunder plus Two and 00/100 percent (2.00%) per annum.

THE UNDERSIGNED AND ASSOCIATION, KNOWINGLY AND VOLUNTARILY, WAIVE THE RIGHT TO A JURY TRIAL ON ANY CLAIM OR ACTION ARISING OUT OF OR RELATED TO THIS NOTE OR ANY OTHER DOCUMENTS EXECUTED IN CONNECTION WITH THIS NOTE OR THE TRANSACTIONS CONTEMPLATED THEREBY OR THE CONDUCT OF THE RELATIONSHIP BETWEEN THE UNDERSIGNED AND ASSOCIATION.

THIS DOCUMENT IS EXECUTED BY UNDERSIGNED IN FAVOR OF ASSOCIATION AS AGENT/NOMINEE OF ITS WHOLLY-OWNED SUBSIDIARY Colonial Farm Credit, PCA PURSUANT TO THE MASTER AGREEMENT DESCRIBED HEREIN. AT THE OPTION OF ASSOCIATION, ANY DEFAULT UNDER THE TERMS AND CONDITIONS OF ANY OTHER WRITTEN INSTRUMENT EXECUTED BY UNDERSIGNED AND OWNED, HELD OR SERVICED BY Colonial Farm Credit, ACA FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES SHALL CONSTITUTE A DEFAULT UNDER THIS DOCUMENT.

This note is the joint and several obligation of all persons executing it. Given under the hand and seal of the undersigned.

_____ (L.S.)
PHILIP BROOKMAN HAGER

_____ (L.S.)

_____ (L.S.)

_____ (L.S.)

20220504000067380  DEED Bk: 3352 Pg: 2027
05/04/2022 12:02 PM  Pages: 7
DEED OF TRUST EXEMPT FROM TAXES
FRANK D. HARGROVE JR., CLERK
BY: LTAYLOR   HANOVER CO. VA

Upon Recording, Please Return To:

_____

THIS INSTRUMENT PREPARED BY:                    EXEMPT FROM RECORDATION
Colonial Farm Credit, ACA                        TAXES PURSUANT TO 12
as agent/nominee                                 U.S.C.2098
7104 Mechanicsville Turnpike                     7815-63-2552
Mechanicsville         , VA  23111
                        Tax Parcel Identification No. 7815-04-9318
                                                 7815-04-6825

## THIS IS A CREDIT LINE DEED OF TRUST

THIS CREDIT LINE DEED OF TRUST, made this 3rd    day of May    , in the year   2022 , by
and between Philip Brockman HAGER whose address is 4708 Kipper Dr., Moseley, Chesterfield
County, VA 23120.

_____
_____
_____

hereinafter called "Grantor," and W. Richard Hairfield, 2800 Buford Road, Richmond, Chesterfield
County/City, Virginia, 23235 and Ronnie G. Gill, 7104 Mechanicsville Turnpike, Mechanicsville, Essex
County/City, Virginia, 23111 respectively, Trustees, either or both of whom may act, hereinafter called
"Trustee."

Communications or notices contemplated under Section 55.1-318 of the Code of Virginia may be mailed or
delivered to the Beneficiary's principal place of business, which is 7104 Mechanicsville Turnpike
Mechanicsville, VA 23111.~

WITNESSETH, that for and in consideration of the sum of One Dollar ($1.00), cash in hand paid, the
receipt of which is hereby acknowledged, and in consideration of the loan(s) hereafter described the Grantor
does hereby grant and convey with general warranty and English covenants of title to said Trustee the
following Property located in Hanover County/City of Beaverdam:
See attached Schedule "A"

TOGETHER with all hereditaments, easements, rights of way and appurtenances hereunto belonging
and all rents, royalties, issues and profits thereof, all minerals, oil, gas and similar matters, and all
improvements thereon and all fixtures and accessories now or hereafter annexed and attached thereto; and
further together with the interest of Grantor in all adjoining streets and alleys and all real property added to
or combined with the property by boundary line adjustment or otherwise, hereinafter collectively the
"Property".

IN TRUST to secure unto Colonial Farm Credit, ACA
as agent/nominee    (hereinafter called the "Beneficiary") the performance of the covenants herein
contained and to secure unto the Beneficiary the payment when due of the following described indebtedness:
(a) All indebtedness and obligations of the Grantor to the Beneficiary or the Trustee which arise under the
provision of any of the Grantor's covenants and agreements herein; (b) Any renewals, extensions,
refinances, reamortizations, modifications or other rearrangements; and (c) All indebtedness and obligations,
whether now existing or hereafter arising and howsoever evidenced, of the Grantor to the Beneficiary, not
exceeding in the aggregate at any one time outstanding, the principal amount of
One Hundred Seventy Six Thousand  and 00/100
_____ Dollars ($ 176,000.00    ), plus interest thereon and costs of
collection, whether all or any part of such indebtedness and obligations is direct or indirect, fixed or
contingent, matured or unmatured, liquidated or unliquidated, whether contracted by the Grantor alone,
jointly, or jointly and severally with another, and whether originally contracted with the Beneficiary or
acquired by the Beneficiary by assignment, transfer or otherwise from another. The indebtedness and
obligations secured hereby may, but need not, be evidenced by the Grantor's endorsement or guaranty of the
indebtedness or obligations of another obligor to the Beneficiary.

ANYTHING contained herein or elsewhere to the contrary notwithstanding, this deed of trust secures
the indebtedness and the obligations described above, and the Grantor hereby acknowledges and agrees that
this deed of trust shall survive and shall not be merged into any other deed of trust, mortgage or security

GO1605VA (08/06)                          Page 1 of 6

agreement executed by the Grantor in favor of the Beneficiary (this deed of trust and such other documents being hereinafter collectively called a "Security Instrument"), whether now existing or hereafter entered into, even though the Beneficiary, one or both of the Trustees, the Property or the Indebtedness secured shall be the same as described in this deed of trust. Accordingly, the Grantor, Trustees and the Beneficiary intend, if one or more Security Instruments are recorded against the Property, that such Security Instruments shall not be merged and that each such Security Instrument, and the liens, encumbrances and security interests created thereby, shall survive separately.

WHEREVER used herein the masculine gender shall include the feminine and neuter and the neuter gender shall include the masculine and feminine and the singular form shall include the plural and all the covenants and agreements of Grantor shall extend to and bind his heirs, devisees, successors and assigns.

GRANTOR covenants and agrees, jointly and severally, with the Trustee and the Beneficiary as follows:

First: That nothing herein contained shall be construed to necessarily obligate the Beneficiary to make loans and advances to the Grantor and that the sole purpose of this deed of trust is to provide collateral security for presently existing indebtedness and for loans and advances the Beneficiary may hereafter make to the Grantor; that the obligation, or lack thereof, of the Beneficiary to make any future loans or advances to the Grantor is not contained herein, but rather is set forth in the note(s) or other loan documents evidencing Grantor's indebtedness to the Beneficiary.

Second: That he warrants generally the Property hereby conveyed; that he is seized thereof in fee simple and has a right to convey same; that he has done no act to encumber the same; that he will execute such further assurances thereof as may be requisite; and that he will use the proceeds of the loan(s) secured hereby solely for the purposes set forth in his application(s) for said loan(s).

Third: That should the title to the hereby described Property or any portion thereof be acquired by any person, partnership, corporation or other entity, other than the Grantor, by voluntary or involuntary grant or assignment, or in any other manner without the Beneficiary's prior written consent, then all of said indebtedness shall at the option of the Beneficiary immediately become due and owing, unless prohibited by law.

Fourth: That he will pay or cause to be paid when due all indebtedness secured hereby, and any extensions, renewals, refinances, modifications, reamortizations or other rearrangements thereof, together with all interest thereon, and all other sums, including but not limited to any prepayment or late charges, payable by him in accordance with the terms of this deed of trust and the note(s) secured hereby, and agrees to pay the said indebtedness without any set-off whatsoever; and that he hereby expressly waives, to the extent set forth in the note(s) secured hereby and, in any event, to the extent of the Property described herein, the benefit of all exemptions, homestead or otherwise, under the laws of this or any other state.

Fifth: That he hereby assigns to the Beneficiary as additional collateral all royalties or other monies due or to become due from any surface or subsurface right or for any right or privilege in any way affecting or pertaining to the Property herein described and all monies which may become due in any condemnation proceedings affecting the said Property and all sums received may be applied, at the option of the Beneficiary, to the discharge of any part or all of the indebtedness secured hereby, whether or not the same be due and payable, or at the option of the Beneficiary, such sums may be returned to the Grantor and the Grantor will not grant any surface or subsurface rights without the written consent of the Beneficiary. Without in any way limiting the generality of the foregoing, the above mentioned rights and privileges with respect to which said royalties or other monies are assigned as additional collateral shall include, but not be limited to, surface or subsurface mineral easements and profits, rights to use of air space, land use rights, and agreements restricting particular land uses, including nonagricultural uses. Grantor further covenants and agrees that he will not, except with the written concurrence of the Beneficiary, lease or transfer to the owner or operator of any other lands any part of any tobacco and/or peanut acreage allotment or allotments or other allotments now existing or hereafter established on any of the Property herein described and that he will not do or perform any act which might impair or tend to impair the continuance of such allotments on the said Property, except that this covenant shall in no way interfere with the Grantor's voting of allotment controls under the existing system of referendums.

Sixth: That he will insure and keep insured buildings and other improvements now on or which may hereafter be placed on said Property against loss or damage by fire, lightning, explosion, riot, aircraft and vehicle damage, smoke, windstorm, hail or other casualty with companies and in amounts satisfactory to the Beneficiary, which amount of insurance coverage shall in any event, at the minimum, equal either the balance of the indebtedness secured hereby, the actual cash value of the property insured or the replacement cost of the property insured, whichever is less. All such insurance shall name Beneficiary as mortgagee/loss payee, and shall provide for prior written notice of termination to Beneficiary. In addition to other insurance coverages if the property is now or hereafter located in a government mandated flood area where participation in a Federal Flood Insurance Program is required, Grantor will obtain and maintain flood insurance in such amount as Beneficiary requires on all buildings, improvements, fixtures and any mobile home(s), now existing or hereafter erected, placed or maintained on or in the Property described in this deed of trust, together with all other personal property securing Grantor's obligations to Beneficiary and maintained in or on such buildings, improvements or mobile home(s), until the loans, future advances and all other indebtedness secured by such Property and this deed of trust are fully paid. Beneficiary may require

Grantor to obtain and maintain such flood insurance at the time the loan(s) secured hereby are made or at any time thereafter until the loans secured by such property are fully paid. Grantor further agrees to pay Beneficiary all reasonable fees and costs incurred in determining whether any of such property is located in an area having special flood hazards including determination fees (of initial and subsequent determination as well as fees for monitoring the flood hazard status of the property during the life of the loan), together with the cost of premiums and fees incurred with purchasing flood insurance for Grantor, if Grantor fails to do so within the time period required by Beneficiary. Any such fees, premiums or costs shall, in the Beneficiary's sole discretion, be due and payable on demand or as otherwise provided for in the promissory note(s) secured hereby or this deed of trust. Any policy evidencing such insurance shall be deposited with and loss thereunder to be payable to the Beneficiary as its interest may appear. In the event of loss Grantor will give immediate notice by mail to the Beneficiary, who may make proof of loss if not made promptly by Grantor, and each insurance company concerned is hereby authorized and directed to make payment for such loss to the order of the Beneficiary only, instead of to the Grantor and the Beneficiary jointly, and the insurance proceeds, or any part thereof, may be applied by the Beneficiary to the restoration or repair of the damaged property or at the option of the Beneficiary may be applied to the reduction of the indebtedness secured hereby. If Beneficiary elects to apply such proceeds to said indebtedness, Beneficiary shall have sole discretion as to the manner in which the application of such proceeds is distributed among principal, interest, charges, penalties, expenses and costs, etc. comprising the indebtedness secured hereby. To the extent permitted by law, in the event of foreclosure of this deed of trust or the transfer of title to the Property herein described in extinguishment of the indebtedness secured hereby, all right, title and interest of the Grantor in and to any insurance policies then in force shall pass to the purchaser or grantee.

Seventh: That he will pay when due all taxes, liens, judgments or assessments heretofore or hereafter levied, assessed or constituting liens upon the Property herein described; and in the event Grantor fails to pay the same when due or fails to maintain insurance as herein provided, the Beneficiary may make such payment or provide such insurance and amounts paid therefor shall become a part of the indebtedness secured hereby and bear interest at the billing rate then in effect from the date of payment.

Eighth: That, if required as a condition of any loan secured hereunder, Grantor shall pay to Beneficiary on the day installments are due, until the note is paid in full or any escrow requirement is otherwise waived in writing by Beneficiary, a sum to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this instrument as a lien or encumbrance on the Property; and (b) premiums for any and all insurance required by Beneficiary. Such amounts required hereunder shall be determined in accordance with the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X ("RESPA"). Upon payment in full of all sums secured by this instrument, or if any such escrow requirement is no longer required as a condition of any loan secured hereunder, Beneficiary shall promptly refund to Grantor any funds held by Beneficiary under this escrow requirement.

Ninth: That he will keep the Property and all improvement thereon in good repair; that he will maintain and work the Property in a good and husbandlike manner; that he will commit no waste and that he will not cut or remove or permit to be cut or removed any wood or timber from said Property except for domestic use without the written consent of the Beneficiary and the Beneficiary shall have the right by injunction or otherwise to prevent the cutting or removal of any wood or timber from said Property irrespective of whether or not the balance of the security is ample to protect the Beneficiary.

Tenth: The terms "hazardous waste," "hazardous substance," "disposal," "release" and "threatened release" as used in this Security Instrument, shall have the same meanings as set forth in the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or Federal laws, rules or regulations adopted pursuant to any of the foregoing. The terms "hazardous waste" and "hazardous substance" shall also include, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos. Borrower represents and warrants to Lender that: (a) During the period of Borrower's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any hazardous substance on, under, about or from the Property; (b) Borrower has no knowledge of or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing (i) any use, generation, manufacture, treatment, disposal, release or threatened release of any hazardous substance on, under, about or from the Property by any prior owners or occupants of the Property or (ii) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (c) Except as previously disclosed to and acknowledged by Lender in writing, (i) neither Borrower nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any hazardous waste or substance on, under, about or from the Property and (ii) any such activity shall be conducted in compliance with all applicable Federal, state and local laws, regulations and ordinances, including without limitation those laws, regulations and ordinances described above. Borrower authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Borrower's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Security Instrument. Any inspections or tests made by Lender shall be

20220504000067380  05/04/2022 12:02 PM  Page 4 of 7

for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of the Lender to Borrower or any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Property for hazardous waste and substances. Borrower hereby (a) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (b) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Security Instrument or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of hazardous waste or substance on the Property. The provisions of this section of the Security Instrument, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Security Instrument and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

Eleventh: That he will permit the Trustee or Beneficiary through its authorized agents to enter upon the Property herein described at any reasonable time for the purpose of inspecting the Property and the order, condition and repair of the buildings, improvements and other collateral located on the Property hereinafter described.

Twelfth: That if at any time hereafter the Beneficiary or Trustee shall for any reason employ agents or attorneys in connection with this deed of trust or the obligation(s) secured hereby, the Grantor hereby agrees to pay the reasonable costs thereof, and any amounts paid by the Beneficiary or Trustee for that purpose shall become a part of the indebtedness secured hereby and shall be payable on demand with interest at the billing rate then in effect from the date of payment. Without limitation, Beneficiary may obtain an updated appraisal of the Property from time to time, at Grantor's expense.

Thirteenth: That, upon default, in addition to any other remedies provided by law, the Trustee shall have the right to take possession of the Property as authorized by law and to operate and manage or lease the same and the Trustee may make any reasonable and proper advances for the operation, maintenance and management of the Property and any sums so advanced shall become part of the indebtedness secured hereby and be payable immediately with interest at the billing rate then in effect from the date of payment.

Fourteenth: Said Grantor hereby grants to the Beneficiary the right and power to appoint a substitute trustee(s) for any reason; and it is agreed that, upon the exercise of this power by the Beneficiary, the substituted trustee(s) shall be vested with all the powers, rights, authorities, and duties vested in the Trustee herein designated and the Beneficiary shall designate and appoint the substitute trustee(s) by an instrument duly executed, acknowledged and filed for recordation in the office of the clerk of the court wherein this deed of trust is recorded.

Fifteenth: That upon default in the payment of the whole indebtedness secured hereby, or any part thereof, as the same shall become due and payable or in the event of a breach of any of the terms, covenants and conditions of this deed of trust or the note(s) secured hereby, or in the event the Grantor or any of them shall die, become insolvent, file any petition under the Federal Bankruptcy Code, make an assignment for the benefit of creditors, or file a petition for an arrangement with creditors, or if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12, the entire indebtedness secured hereby shall, at the option of the Beneficiary, become immediately due and payable with interest thereon, as provided in the note(s) or other instrument(s) governing such indebtedness.

Sixteenth: That, upon default, the Trustee shall, upon the request of the Beneficiary, sell the Property herein described, either as a whole or in parcels, at public auction at the front door of the courthouse of the county wherein the Property is located, or at such other place as the Trustee may elect, for cash, or upon such other terms agreeable to the Beneficiary as the Trustee may deem beneficial in the execution of this trust, after first advertising the day, hour, place and terms of such sale and a description of the Property to be sold by publication in some newspaper of general circulation in the county or city where the Property is located, once a week for three successive weeks preceding the day of sale, and the Trustee may advertise in such other manner as will, in its opinion, be best calculated to attract bidders, and such sale may be adjourned from time to time by oral proclamation at the time and place appointed for the sale, and if necessary in making such sale, the Trustee may secure a title update and survey of said Property and the cost thereof shall become a part of executing this trust; that immediately upon the first insertion of the advertisement in some newspaper, as aforesaid, there shall be and become due by said Grantor to the Beneficiary all expenses incident to said advertising and any other fees and costs incurred by reason of the default hereunder, which said expenses, fees and costs said Grantor hereby covenants to pay as a part of the indebtedness secured hereby and neither Beneficiary nor the Trustee hereunder shall be required to receive the principal and interest only of the Indebtedness secured hereby unless accompanied by a tender of said expenses, fees and costs, but said sale may be proceeded with unless prior to the day appointed therefor legal tender be made of said indebtedness, fees, expenses and costs. Interest shall accrue and Beneficiary shall be entitled to collect interest on all outstanding indebtedness secured hereby through the date of closing of settlement of sale of the Property at foreclosure. The Trustee shall pay out of the proceeds of sale: FIRST, all costs of executing this trust, including a reasonable commission to the Trustee and all reasonable

20220504000067380  05/04/2022 12:02 PM  Page 5 of 7

attorneys' fees, as permitted by applicable state law, and all other expenses incurred in execution of this trust (including without limitation, advertising expenses, costs of obtaining possession of the Property, auctioneer fees, expenses required to correct any irregularity in the title, all taxes and assessments due at the time of closing of sale, and all sums advanced by Beneficiary or Trustee to pay utilities, taxes, assessments, cleaning or other costs of preparing the Property for sale), and all attorneys' fees and costs in substituting a trustee; SECOND, the indebtedness secured hereby, THIRD, to pay liens of record against the Property according to their priority of lien and to the extent that funds remaining in the Trustee's hands are available; and the residue, if any, shall be paid to the Grantor. The Trustee shall settle the accounts in accordance with the statutes in such cases made and provided. In the event that the Property is advertised for sale but not sold, Borrower agrees to pay all expenses incurred in pursuing the remedies providing herein, including but not limited to, reasonable attorneys' and trustees' fees.

Grantor agrees to pay on demand, and Trustee may reimburse itself out of foreclosure proceeds as a cost of executing this trust all costs, expenses and reasonable attorneys' fees incurred by Trustee in defending itself in any claim or litigation arising out of its service or activities as Trustee hereunder, including without limitation any claims filed by Grantor or Borrower.

Seventeenth: That the Beneficiary, at its option, may require the Trustee to give a bond satisfactory to the Beneficiary, conditioned upon the faithful performance of the duties hereunder, and any premium paid on such bond shall become a part of the cost of executing this trust.

Eighteenth: That without affecting the liability of the Grantor or any other person (except any person expressly released in writing) for payment of any indebtedness secured hereby or for performance of any obligation contained herein and without affecting the rights of the Trustee or Beneficiary with respect to any security not expressly released in writing, and without affecting the priority of the lien of this deed of trust the Trustee or Beneficiary may, at any time and from time to time, either before or after the maturity of said indebtedness, and without notice to or the consent of any party hereto or any other party: (a) release any person liable for payment of all or any part of the indebtedness or for performance of any obligation; (b) make any agreement reamortizing, extending, renewing, refinancing, modifying or otherwise altering the terms of payment of all or any part of the indebtedness, or modifying or waiving any obligation or subordinating, modifying or otherwise dealing with the lien or charge hereof; (c) exercise or refrain from exercising or waive any right Trustee or Beneficiary may have; (d) accept additional security of any kind; (e) release or otherwise deal with any Property, real or personal, securing the indebtedness, including all or any part of the Property herein described without affecting the lien priority of this deed of trust on the remainder of the Property, for the full amount of any indebtedness unpaid.

Nineteenth: THE DEBT SECURED HEREBY IS SUBJECT TO CALL UPON DEFAULT AND/OR SUBJECT TO THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY.

THIS DEED OF TRUST IS GOVERNED BY, UNLESS OTHERWISE MODIFIED HEREIN, §§ 55.1-320 AND 55.1-321 THROUGH 55.1-324 OF THE CODE OF VIRGINIA (1950) AS AMENDED AND THE TERMS AS SET FORTH IN §55.1-315, subject to the provisions hereof.

Grantor acknowledges and agrees that the fact that at any time no obligations may be outstanding while this Deed of Trust remains unreleased of record shall in no way affect the lien of this Deed of Trust as to any debts or obligations hereafter arising, and Beneficiary shall have no obligation to release this Deed of Trust upon satisfaction of obligations hereunder unless and until requested to do so by Grantor at a time when no obligations are outstanding.

THIS DEED IS EXECUTED BY UNDERSIGNED IN FAVOR OF, AND THE TERM "BENEFICIARY" AS USED HEREIN SHALL INCLUDE, Colonial Farm Credit, ACA, FOR ITSELF AND/OR AS AGENT/NOMINEE FOR ANY PARTY PURSUANT TO A MASTER AGREEMENT AMONG IT AND ITS WHOLLY-OWNED SUBSIDIARIES Colonial Farm Credit, FLCA AND Colonial Farm Credit, PCA, AS THEIR INTERESTS MAY APPEAR.

20220504000067360  05/04/2022 12:02 PM  Page 6 of 7

WITNESS the hand and seal of said Grantor the day and year aforesaid.

_Philip Brockman Hager_ _____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

STATE OF _Virginia_                                          (Individual)
CITY/COUNTY OF _Henrico_                    , to wit:

The foregoing instrument was acknowledged before me,
Notary Public, this 3rd    day of  May        , 2022   , by  Philip Brockman Hager

[Signatory(ies)], who is/are either personally known to me OR who has/have presented identification (a
a valid driver's license                                    (a United States Passport, a
certificate of United States citizenship, a certificate of naturalization, an unexpired foreign passport, an alien registration
card with photograph, a state issued driver's license or a state issued identification card or a United States military card).

_Faisal S. Qureshi_ _____
Notary Public _Faisal S. Qureshi_
Registration Number: _7064316_
My term of office expires: _5-31-2022_

STATE OF                                              (Corporate)
CITY/COUNTY OF                        , to wit:

The foregoing instrument was acknowledged before me,
Notary Public, this        day of            ,        , by

[Signatory], who is either personally known to me OR who has presented identification of
                              (a United States Passport, a certificate of United States citizenship, a certificate
of naturalization, an unexpired foreign passport, an alien registration card with photograph, a state issued driver's license
or a state issued identification card or a United States military card), and who has voluntarily acknowledged this
instrument in his/her capacity as the _____ of _____
                              corporation, on its behalf.

Notary Public
Registration Number:
My term of office expires:

001808VA (p.6)                                    Page 6 of 6

Schedule A

Parcel I- 7815-63-2552

ALL that certain tract, piece or parcel of land, lying and being in Beaverdam District, Hanover County, Virginia, shown on the below reference plat of survey as Parcel B, containing 8.8 acres, more or less, prepared by Downing Surveys, Inc., dated May 10, 2005, revised August 7, 2005, and recorded in the Clerk's Office, Circuit Court, Hanover County, Virginia in Deed Book 2576, page 468, said survey being made a part hereof for a more particular description.

SUBJECT TO a non-exclusive easement for ingress and egress to and from Parcel A, said easement being variable in width over approximately the southern half of Parcel B and then becoming a fifty (50) foot non-exclusive easement over approximately the northern half of Parcel B along the western boundary line of Parcel B to a cul-de-sac at the northwestern corner of Parcel B, all as more particularly shown on the aforesaid plat of survey.

Parcel II and III- 7815-64-9318 and 7815-64-6825

ALL those certain lots or parcels of land, lying and being in Hanover County, Virginia, designated as Lot 1, containing 11.5 acres +/- and Lot 2, containing 11.5 acres +/-, on a plat prepared by Downing Surveys, Inc., entitled "Parsons Estates, a subdivision of 23.0 +/- acres in the Beaverdam District, Hanover County, VA", dated April 10, 2005, recorded April 26, 2007 in the Clerk's Office, Circuit Court, Hanover County, Virginia in Plat Book 38, page 22, to which plat reference is made for a more particular description of the property.

TOGETHER WITH a non-exclusive easement for ingress and egress to Parsons Road Route 608, as shown on the above referenced plat.

7

DocuSign Envelope ID: D640E3F9-3110-41EC-9BEE-FC26E1BAEFFC

THIS IS A COPY
The Authoritative Copy of this record is held at NA3.docusign.net

## EXISTING DEED OF TRUST ACKNOWLEDGEMENT

Date:  April 24, 2024

It is acknowledged and agreed that Philip Brockman Hager may utilize the below described
Credit Line Deed of Trust to secure a loan (# ███████████ 7 7 ( 3 ) for the purpose of bringing
primary loan # 35868901000 current to allow time for property sale.

- Deed of Trust Date: 5/3/2022
- Instrument Number: 20220504000067380 a.k.a DB 3352 PG 2027
- Filed in the County/City of  Hanover, VA
- Grantors:  Philip Brockman Hager
- Beneficiary:  Colonial Farm Credit, ACA as agent/nominee
- Deed of Trust Amount:  $176,000
- Security: 31.8 acres Hanover GPIN#'s 7815-63-2552, 7815-64-9318, & 7815-64-6825

_____ (Seal)
Philip Brockman Hager

_____ (Seal)
Joe A. Shearin

9-22-15

**U.S. Bankruptcy Court**

**Eastern District of Virginia**

Notice of Electronic Claims Filing

The following transaction was received from Trexler, John on 8/1/2025 at 12:28 PM EDT

File another claim

| | |
|---|---|
| **Case Name:** | Philip Brockman Hager |
| **Case Number:** | 25-32367-KLP |
| **Creditor Name:** | Colonial Farm Credit, ACA<br>7104 Mechanicsville Tpk.<br>Mechanicsville, VA 23111 |
| **Claim Number:** | 21   Claims Register |

**Amount Claimed:** $9,188.98
**Amount Secured:** $9188.98
**Amount Priority:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**Hager2.pdf
**Electronic document Stamp:**
[STAMP VAEBStamp_ID=875559604 [Date=8/1/2025] [FileNumber=42515269-0]
[5aa8eed52bb72c86f043d0a9541e1cd0ac6e3c3f01436aed07c4785c68a55fbc105f0
9d8f96604b7ad8ed196781abdaeef75aeb3771ec65f18bd387a673d1bb7]]

**25-32367-KLP Notice will be electronically mailed to:**

Matthew W. Cheney
USTPRegion04.RH.ECF@usdoj.gov

Hannah White Hutman on behalf of Creditor Pendleton Community Bank
hhutman@hooverpenrod.com, scurtis@hooverpenrod.com;hooverpenrodplc@jubileebk.net

Andrew Todd Rich on behalf of Creditor Commonwealth of Virginia, Dept. of Social Services, Division of Child
Support Enforcement
trich@oag.state.va.us, bankruptcy@dss.virginia.gov

Suzanne E Wade
ecfsummary@ch13ricva.com

James H. Wilson, Jr. on behalf of Debtor Philip Brockman Hager
jameswilson29@gmail.com

**25-32367-KLP Notice will not be electronically mailed to:**